IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| XIDRONE SYSTEMS, INC. § <br> § <br> Plaintiff, § <br> § <br> § Civil Action No. 3:21-CV-2669-N <br> § <br> 911 SECURITY INC., § <br> § <br> Defendant. § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant 911 Security Inc.'s ("911") motion to dismiss Plaintiff XiDrone Systems, Inc.'s ("XiDrone") Complaint [7]. Because the questions are not quite as straightforward as the parties' analyses suggest, the Court grants in part and denies in part the motion to dismiss.

### I. BACKGROUND

XiDrone sues 911 for infringement of U.S. Patent No. 10,670,696 (the "'696 Patent" or the "Patent"). The Patent related generally to a system to detect a radio frequency remote controlled vehicle, typically a drone, and assess whether it is a threat based on various sensor data. The parties both appear to accept claim 1 as representative. It provides:

> 1. A system for interacting with a radio frequency remote-controlled vehicle, comprising:
> at least one computing device including a processor, non-transitory memory and a plurality of applications configured to run on the processor;

ORDER – PAGE 1

>at least one radio receiver coupled to the computing device and configured to select specific radio signals;
>wherein the system is configured to: scan a radio frequency spectrum;
>detect a vehicle by receiving radio transmissions involving the vehicle, wherein the radio transmissions include data sent from the vehicle;
>create a unique identifier for the vehicle using at least a portion of the data; and
>perform a threat assessment for the vehicle using at least a portion of the data.

'696 Patent col. 23, ll.16-31.[1]

## II. *ALICE* IN THE FEDERAL CIRCUIT

Section 101 states a patent can be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "Whether a claim is drawn to patent-eligible subject matter is an issue of law." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010); see also *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008) ("Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry . . . ."). The Supreme Court articulated a two step approach for resolving whether a claim falls outside the scope of section 101. The "Court must first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). If so, the Court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform

---

[1] The parties also cite claim 9, which is the corollary method claim to claim 1.

the nature of the claim' into a patent-eligible application." *Id*. (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79, 78 (2012)).

One of the first Federal Circuit cases to address *Alice* was *Enfish*. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016). *Enfish* dealt with a patent for a novel method of organizing data in a database unlike the traditional table method. Under the first *Alice* step, the *Enfish* Court explained, a court determines if the claim at issue falls into an exception to section 101. Courts have "long grappled with the exception that '[l]aws of nature, natural phenomena, and abstract ideas are not patentable.'" *Id.* at 1334 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). Not "all improvements in computer-related technology are inherently abstract." *Enfish*, 822 F.3d at 1335. Where claims "simply [add] conventional computer components to well-known business practices," they are directed toward an abstract idea because computers are merely invoked as a tool. *Id.* at 1338. On the other hand, if "the focus of the claims is on the specific asserted improvement in computer capabilities," then the claim may not be directed at an abstract idea. *Id.* at 1336. In *Enfish,* the Court concluded that the claims at issue were not directed to an abstract idea but instead focused on an "improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Id.*

The backdrop for this was the distinction that *Alice* drew between "do it on a computer" and something that actually improves the operation of the computer itself.

ORDER – PAGE 3

*Compare Alice*, 573 U.S. at 223 ("Stating an abstract idea while adding the words 'apply it with a computer' simply combines those two steps, with the same deficient result.") *with id.* at 225 ("The method claims do not, for example, purport to improve the functioning of the computer itself."). At first blush, this would suggest a distinction between hardware and software. As the Federal Circuit later described *Enfish,* the line drawing is not quite so simple:

> The claims here are unlike the claims in *Enfish*. There, we relied on the distinction made in *Alice* between, on one hand, computer-functionality improvements and, on the other, uses of existing computers as tools in aid of processes focused on "abstract ideas" (in *Alice*, as in so many other § 101 cases, the abstract ideas being the creation and manipulation of legal obligations such as contracts involved in fundamental economic practices). *Enfish*, 822 F.3d at 1335–36; *see Alice*, 134 S. Ct. at 2358–59. That distinction, the Supreme Court recognized, has common-sense force even if it may present line-drawing challenges because of the programmable nature of ordinary existing computers. In *Enfish*, we applied the distinction to reject the § 101 challenge at stage one because the claims at issue focused not on asserted advances in uses to which existing computer capabilities could be put, but on a specific improvement — a particular database technique — in how computers could carry out one of their basic functions of storage and retrieval of data. *Enfish*, 822 F.3d at 1335–36; *see Bascom*, 827 F.3d at 1348–49, 2016 WL 3514158, at *5; *cf. Alice*, 134 S. Ct. at 2360 (noting basic storage function of generic computer). The present case is different: the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools.

*Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

The next case significant to the Court's analysis is *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016). *BASCOM* dealt with the subject of internet filtering and focused on step 2 of *Alice*. Given the proliferation of

ORDER – PAGE 4

inappropriate content on the internet, it is desirable to be able to filter out such content. *Id.* at 1343. The prior art included two filtering approaches: (1) a customizable filter on the client device, and (2) a noncustomizable filter on the internet service provider (ISP) server. Each approach had strengths and weaknesses, *Id.* at 1343-44. The invention in *BASCOM* was a customizable filter on the ISP server. *Id.* at 1344.

The Court readily found the patent was directed to the abstract idea of filtering under step 1 of *Alice*. *Id.* at 1348-49. Turning to *Alice* step 2, the Court noted:

> The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.
>
> The inventive concept described and claimed in the '606 patent is the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user. This design gives the filtering tool both the benefits of a filter on a local computer and the benefits of a filter on the ISP server.

*Id.* at 1350. The Court concluded that under its precedents, this was a sufficiently inventive concept to pass *Alice* step 2. *Id.* at 1350-52.

### IV. THE PATENT SURVIVES *ALICE* IN PART

#### *A. Claim 1*

Claim 1 of the Patent is directed to collecting data and processing data. That fits the format of collect data, process data, and output the processed data, which is an abstract idea. *See In re Killian*, 45 F.4th 1373, 1380 (Fed. Cir. 2022) ("We have found similar claims pertaining to data gathering, analysis, and notification on generic computers to be

ORDER – PAGE 5

directed to abstract ideas at *Alice/Mayo* step one."); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). It also was a process that could be done manually by one or more people, so this fits the profile of "do it on a computer" that is also an abstract idea. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 n.2 (Fed. Cir. 2015) (collecting cases). Accordingly, claim 1 is directed to ineligible subject matter under step one of *Alice*.

In step two of *Alice,* the Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 218 (quoting *Mayo*, 566 U.S. at 79, 78). The Federal Circuit's *BASCOM* decision is instructive:

> BASCOM explains that the inventive concept rests on taking advantage of the ability of at least some ISPs to identify individual accounts that communicate with the ISP server, and to associate a request for Internet content with a specific individual account. . . . According to BASCOM, the inventive concept harnesses this technical feature of network technology in a filtering system by associating individual accounts with their own filtering scheme and elements while locating the filtering system on an ISP server.

*BASCOM*, 827 F.3d at 1350.

> As explained above, construed in favor of BASCOM as they must be in this procedural posture, the claims of the '606 patent do not preempt the use of the abstract idea of filtering content on the Internet or on generic computer components performing conventional activities. The claims carve out a specific location for the filtering system (a remote ISP server) and require the filtering system to give users the ability to customize filtering for their individual network accounts.

*Id.* at 1352.

ORDER – PAGE 6

XiDrone primarily responds to step 2 by reciting allegations in its Complaint. *See* XiDrone Response at 20-22 [13]. But the issue in a section 101 motion to dismiss is the language in the claims, not the language in a complaint. *See Secured Mail Solutions L.L.C. v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017). Thus, the allegations in XiDrone's Complaint are not pertinent to the issue before the Court.

XiDrone also suggests that the threat assessment is the inventive concept. But the Patent does not claim any particular *type* of threat assessment, just the step or component of threat assessment. *See* '696 Patent col. 19, l. 57 to col. 21, l. 56 ("non-limiting" example of threat assessment). And the threat assessment is nothing more than the processing of data collected from the sensors. As discussed above, processing data is not patent-eligible subject matter. Accordingly, claim 1 fails step two of *Alice*. The Court therefore holds that claim 1 is not directed to patent eligible subject matter.

### B. Some Claims Are Different

The Court's inquiry does not end there. The Court must consider each claim and determine whether the additional elements transform some claims into patent-eligible subject matter. That is the case here.

Under *Alice* step one, the Court must "determine whether the claims at issue are directed to a patent-ineligible concept[,]" such as an abstract idea. *Alice*, 573 U.S. at 218. A court must consider "what the patent asserts to be the 'focus of the claimed advance over the prior art.' " *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (quoting

ORDER – PAGE 7

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). Claim 1 is directed to identifying a vehicle threat, and is thus directed at an abstract idea.[2]

But some of the claims do more than just assess the threat – they actively take action to suppress the threat. Claim 6 is an example: "The system of claim 1, wherein the at least one computing device is further configured initiate an interdict operation against the vehicle." '696 Patent col. 23, ll. 46-48. This claim is not directed to an abstract idea under step one of *Alice*; rather it is directed to taking tangible action against a physical threat, and so is directed at patent-eligible subject matter under section 101. The same is true of claims 8, 10, 11, 14, 16, 18, 19, 22, and 24.[3]

## Conclusion

The Court denies 911's motion to dismiss with respect to claims 6, 8, 10, 11, 14, 16, 18, 19, 22, and 24, and otherwise grants the motion with respect to the remaining claims. The Court will likely be understanding if XiDrone wishes to amend its pleadings or contentions in response to this Order.

---

[2] It is tempting to think the claimed advance over the prior art in the '696 Patent is the process of threat assessment. But the patent does not claim any particular method of threat assessment and gives only one "Non-Limiting" example of a threat assessment. *See* Patent col. 19, l. 57 to col. 21, l. 56.

[3] Another way to conceptualize this is under *Alice* step two. While claim 1 is not patent-eligible, the additional element of threat suppression in claim 6 "'transform[s] the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 218 (quoting *Mayo*, 566 U.S. at 79, 78).

Signed September 27, 2022.

_____
David C. Godbey
Chief United States District Judge

ORDER – PAGE 9